Good morning, Your Honors, and may it please the Court, Nathaniel Garrett for the Plaintiff. I'd like to reserve two minutes for rebuttal. Your Honors, Plaintiff Joaquin Ciria is seeking injunctive relief that would provide him with access to documents in the defendant's possession, which he intends to use in a separate and subsequent proceeding if they prove exculpatory. This case comes to the Court after a dismissal with prejudice, and it presents two questions. First, is Ciria's claim barred by the Heck Doctrine? And second, is Ciria's claim untimely? Because the answer to both of those questions are no, we are asking this Court to reverse and remand and provide the District Court with the first opportunity to address the merits of the plaintiff's claim. First, as to the Heck Doctrine, the District Court entered a dismissal because in its view, success here would necessarily demonstrate the invalidity of Ciria's conviction, and thus must be brought in habeas rather than 1983. That conclusion was wrong as a matter of law. Success here could not possibly, let alone necessarily, demonstrate the invalidity of Ciria's conviction, because even if he prevails here, and even if the evidence he seeks proves to be sufficiently exculpatory, he will still have to bring an entirely separate action in an entirely separate Court to invalidate his conviction. Second, Your Honor, is the District Court reason that Ciria's claim is untimely, because he should have surmised in 1991 at the time of his trial that the documents he now seeks existed and were being suppressed. There are two problems with that analysis, Your Honor. First, it's wrapped up in the misconception that all Ciria has is a claim rooted in Brady, and thus the injury was the suppression at his time of a criminal trial. What the Supreme Court's opinion in Osborne makes clear is that Ciria, in fact, has no Brady claim. What he has is a separate constitutional claim, a procedural claim. Counsel, let's explore that for a moment. In Osborne, the plaintiff was just seeking to compel the State to release evidence that was already in the case. And here, your client is seeking production of evidence that was not provided. That's right, Your Honor. And so to be sure, I think the case turns on whether the fact that this evidence allegedly existed at the time of trial renders Ciria's claim untenable. What is that but a Brady question? Well, Your Honor, I think it's still a procedural due process claim, the kind Osborne said. He's not – he doesn't want to complain about the fact that the evidence was suppressed at trial. What he wants to complain about – It wasn't suppressed. It was – That it wasn't turned over. It wasn't evidence, was it? No, Your Honor. What he wants – that's right, Judge Ritter. What he wants to complain about is the fact that without this evidence, he can't vindicate – Well, it is evidence. She asked you if it's not evidence, and you said no. Well, it's evidence to you now, I guess. That's right, Judge Ritter. It was not in the underlying case. It would have been evidence then if you hadn't – I mean, it would have been evidence in the case if you had known about it then. I wasn't his trial counsel. It's hard to say, but – Well, if this attorney had known about it otherwise, why do you want it if it wasn't the same company? I would think so. I mean, I think it meets the materiality standard that he has to show in this case, which I would emphasize is lower than he has to show to prove his ultimate conviction. But I would draw the Court's attention to the plurality and the dissent in Osborne when they're discussing this issue about whether 1983 is the appropriate venue. And one thing Justice Alito says – and he's joined in this part only by Justice Kennedy – In that respect, I agree with him, Judge Rawlinson. I think he's right. The majority drew no distinction between whether the evidence was available at the time of trial or not. And I think the reason is that because Syria has to show a very different thing now. And in some ways, it's a very challenging thing. He has to show that he's got a liberty – a substantive liberty interest in post-conviction relief. And he's got to show that without what is now in the defendant's possession, he can't fairly vindicate that interest. It's a very difficult question, to be sure, Your Honor, but we think the district court should address that in the first instance. As to the – I'd like to touch on the statute of limitations issue. It's a confusing and complicated issue. Every court – and I want to emphasize this – every court that has properly conceived of this claim as Syria now wants to plead it, as a procedural due process claim, including the Seventh Circuit in Savory, has held that the claim accrues when the plaintiff asks for and is denied the evidence. If the court decides not to create a circuit split on that issue and agrees, I think that's a factual dispute as to whether Syria has asked for the evidence when it was denied and thus whether it would be timely under that reasoning and thus must be sent back. I would note that one of the dangers in trying to address that issue here is evidenced by the city's 28J letter, which was submitted on October 1st of 2009. In their brief, they say, we've scoured the record and there's no evidence that Syria asked for this evidence at any point and thus you must find that it's not right and send it back. In fact, in that letter, they concede they found something new, which is Syria asking for the interview notes that he now seeks here. And so I think it's very dangerous for this body – for this court to sit as a fact-finding body and say, we definitely have everything. We can conclude he – Well, if he asked for them before, why doesn't that – didn't that start the running of the statute of limitations? I think – I think it does, Your Honor. I think it starts it when he asked for it and is denied it. That's what Savory said, I think. When did he ask for them? He asked for it in 2005 – 2004 and he was denied the date of the order is January 25th, 2005. And Syria – And who did he – he asked the police? No, he asked – he asked for it in state court through the state pages proceeding. Oh, I thought – I thought he asked for the police. Well, and that's an – the interesting thing about that point, Judge Rollinson, is that courts have found that the statute can be triggered either by a letter to the police or by the sort of more formal request. What is it that you want now, exactly? Your Honor, absolutely. Let me be clear. We want the Court to address two – the two issues that the district court really decided. One, does Heck bar this claim? Yes, but this claim is – what is it that you're – Sure. He wants to assert the procedural due process claim sanctioned by Osborne. And what that is, is to show that California's state post-conviction procedures are not fundamentally fair. And they're not fundamentally fair because of this catch-22 that Your Honor identified in Calderon and that the California Supreme Court accepted in Enrique Gonzalez. And so that's – it's a very high threshold, Your Honor. Justice Roberts – Chief Justice Roberts set forth what that showing would be. It's just the district court has never heard argument about – about that claim. And the standard, in our view, is the one set forth in this Court's opinion in Haddock, which said it may be that he – you know, the plaintiff at first invokes the wrong legal claim. That may be. But the question is really, given the facts alleged, given the nature of the claim, can this pro se plaintiff go back and plead something else? In that case – Okay. Let me ask you this, sir. Sure. How – you were appointed counsel by our commissioner? Yes, Your Honor. And we appreciate your serving, but how long is your appointment? It's for this appeal, Your Honor. Okay. Let me maybe address the concern for the Court as to – the Court may decide there are certain merits issues. It can reach in certain ones. It just can't because there are factually disputed issues. We can see that, to some degree, the question about California's constitutionality – Yeah. Post-conviction process. Right. It is somewhat a legal question, though there does seem to be a dispute even with that as to whether Syria has – It's a pretty sophisticated legal issue. It is, Your Honor. It is. There are two minutes left. I'd like to reserve those. Okay. Thank you. Good morning, Your Honors. May it please the Court. My name is Daniel Zahir. I represent the City and County of San Francisco in this appeal, who are the appellees and defendants. The question presented in this case is whether a procedurally defaulted habeas petitioner has an unconditional right to fish through privileged investigation files in order to determine whether there might be some belated basis for that petitioner to attack the basis for the conviction. Were the Court to adopt Mr. Syria's argument, it would mean that every prisoner in the Ninth Circuit would have an unconditional discovery right to fish through files even if 50 or 100 years had passed since their conviction, even if the habeas petition is procedurally barred under both State and Federal law, and even if there is no realistic possibility that the documents sought could secure habeas relief. We've cited multiple bases in our brief why that conclusion is precluded by settled Supreme Court and Ninth Circuit precedent, but I would like to focus on two of the most obvious and straightforward reasons why the Court must affirm the judgment of the District Court. The first is the statute of limitations issue. The most obvious flaw in Mr. Syria's request is that he's claiming there's essentially no statute of limitations that applies to this form of 1983 claim. That's clearly not the law. The law of this circuit and the law of the Supreme Court is that the claim accrues when all the facts that form the basis of the current argument were available to the plaintiff. And in this case, that could be no later than 1991 when Mr. Syria first learned the facts that form the substance of this claim now, which include the alleged surveillance that he says he observed back then and the alleged witness interviews which he was present for. The second straightforward reason why Mr. Syria's claim must fail is that it's clear after Osborne 3, and Mr. Syria has conflated a couple of things in that right, but it's clear after Osborne 3 that the only viable claim that Mr. Syria can bring is a facial challenge to the entire apparatus of California's post-conviction discovery procedures. And in order to satisfy that challenge, he has to meet the incredibly high burden of showing that California's standards don't meet the standards of this country. Syria's only argument on that score is that California's procedures must be unconstitutional because they are not identical to federal procedures. First of all, that premise is a false premise and it violates the clear rules set forth in Osborne 3 and Pennsylvania v. Finley, which is that state courts and state legislatures have broad discretion and large amounts of flexibility in determining how to craft their own state criminal procedures in order to forward the state interest in prosecuting criminal justice. But even if Mr. Syria were correct that there had to be an identical procedure in state law in order to meet federal due process standards, his claim would still fail because it's undisputed in this case that the potential habeas corpus petition that he wishes to bring, which he has alleged in this appeal, would lose because it's procedurally barred. Both California and federal habeas corpus procedures are absolutely clear in requiring that before you get the privilege of discovery, you have to present a procedurally proper petition. Mr. Syria's potential petition that he has not yet filed would clearly be time barred. It would be defaulted as not having been exhausted and it would be barred as a second and successive habeas corpus petition. So on that premise alone, California's procedures must be constitutional. Now, even if the court were to get into the pleading standards, which counsel just referred to as the basis for looking at California's discovery procedures, I would submit that Mr. Syria's reading of California law is still incorrect. The only way that Mr. Syria finds any daylight between California and federal standards is the California Supreme Court's case of Gonzalez. But in that case, all the California Supreme Court said was that in order to present a valid prima facie case, the petitioner has to present non-speculative, non-ambiguous allegations that, if true, would sustain a petition for relief. That is exactly the same standard that applies under federal law. Under federal law, under Calderon v. District Court 98F3rd1102, federal law also requires a non-speculative, non-conclusory and non-ambiguous discovery or, excuse me, allegation in order to sustain a habeas petition. How broadly do you read Osborne? How broadly do I read it? Or narrowly or whatever. I think there's two important rulings in Osborne that apply to this case. One is that Mr. Syria's — the relief that he seeks in this case is not something that he can get, which is there is no free-floating federal right to obtain evidence through a Section 1983 case. There is a right to proper procedures. And so the only viable challenge that Mr. Syria can bring after Osborne III is a facial challenge to California's habeas corpus discovery procedures. Well, do you think that Osborne applies to all efforts to obtain evidence in the post-conviction context? Well, Osborne tells us that the proper method to obtain evidence in the post-conviction process is to go through the state and also the federal court's provision of post-conviction discovery remedies. And the only involvement that a Section 1983 suit under the Due Process Clause has is to determine whether those procedures are valid under the Due Process Clause. Okay. The clock seems to have malfunctioned again. Oh. Okay. We understand. You don't try to limit it to the kinds of DNA or other physical evidence that naked — So you don't limit it to the evidence that's already in the possession of the state that the defendant is trying to get. It's wide open in terms of how you interpret Osborne for any evidence that may have been in existence or may be in existence. Well, I think when we're talking about Osborne 2 and Osborne 3's ruling about the Heck issue, the Heck and Priester issue, about whether this petition would be barred, I think that that distinction does make a difference. As Your Honor pointed out, there's a vast difference under Heck and Priester between a case in which the — you were talking about DNA evidence and all the petitioner wants to do is submit previously disclosed DNA evidence to new testing, to this case in which Mr. Seria has always articulated that the right he claims was violated, and the reason he claims he has standing is an ongoing refusal of the defendants and the state to provide this evidence which he is seeking. What does that word ongoing mean? Well, it means that since the time of trial, this evidence which he speculates exists hasn't been produced. Now, if this court or any court were to find that exculpatory evidence was not produced at trial, then Mr. Seria's conviction would invariably be invalidated, and that would violate Priester and Heck. Okay.  Thank you, Your Honor. I want to emphasize that we're not asking this court to find that material evidence was suppressed at trial, and that's not what Seria would ask the district court to find. It's something lower. Osborne, too, says what he has to show here is not what he would have to show in the ultimate proceeding. I want to address briefly Judge Rawlinson, what I think is a concern about, you know, whether this evidence even exists, credibility.  If a plaintiff comes and says that he believes evidence exists and it's just not, it doesn't go past, it's conceivable but not plausible, well, the district court could say you failed, Iqbal, but that's not what occurred here. We think he has made credible allegations. And there is, to be sure, a distinction between DNA evidence that was not available at the time of trial and what we're seeking now, but the distinction only matters for Heck purposes if what we have to show now is the same thing we would have to show in a State post-conviction proceeding for ultimate relief. And that's not what we have to show, according to Osborne, too, in the Supreme Court's opinion in Osborne. So you agree that you have to show, you have to attack the validity of those procedures? Your Honor, I don't agree that it's a facial challenge. I mean, I think that's a misread provision of the Supreme Court's opinion in Osborne, and it's also predicated on the mistaken notion that Seria hasn't asked for and been denied the documents in this case. I want to draw the Court's attention back to that 28J letter where Seria asked for the interview notes, and one of the reasons the district court denied it is because he did, on page four of the Superior Court's opinion, he says Seria didn't have evidence that these interview notes had been suppressed. That's Gonzales. It's not a theoretical standard, Your Honor. That's what California courts do, and it's applied in this case. And what we intend to show is that that standard is not compatible with Harris v. Nelson, where the Supreme Court said where specific allegations before the Court show reason to believe that the Petitioner may, if the facts are fairly developed, be able to demonstrate he is confined illegally, it is the duty of the Court to provide the necessary facilities and procedures for an adequate inquiry. California is the only State I know that has refused to adopt that standard, Your Honor, and we think it's unconstitutional. Thank you. Thank you. The Court appreciates the quality of the argument presented, and the case just argued is submitted for decision.
judges: Collins, Schroeder, Rawlinson